# William P. Towt, Appellant, *v.* The City of Philadelphia, Lemuel J. McCaulley and Edward V. McCaulley, Trading as McCaulley Brothers.

*Negligence—Landlord and tenant—Wharves—Failure to maintain wharf in repair.*

In an action against a city and a tenant under the city of a wharf property, to recover damages for injuries to a horse and wagon caused by failure to maintain the wharf in proper condition, where it appears that the wharf was in the possession of a subtenant at the time of the accident, although there was a covenant against subletting in the lease from the city, it is proper to instruct the jury that unless the plaintiff showed that the wharf was not in proper condition at the time of the lease from the city to the tenant, the city was not liable, and in like manner unless he showed that the wharf was in an unsafe condition at the time of the subletting, the tenant was not liable, and that his action, if he had any, was against the sublessee in possession. In such a case the breach of the covenant against subletting rendered the lease voidable, and not void, and if the city did not object, no other person could do so.

Argued Jan. 9, 1896. Appeal No. 427, Jan. T., 1895, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1890, No. 686, on verdict for defendants. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for injuries to a horse and wagon. Before WILLSON, J.

At the trial it appeared that on February 28, 1888, the city leased the Cumberland Street wharf on the Delaware river to McCaulley Bros. The lease was for three years, and contained a covenant against subletting. On May 31, 1890, McCaulley Bros. sublet the wharf to Michael Herron for a period of nine months. Herron went into possession of the wharf, and was in possession thereof on December 31, 1890, when the accident to plaintiff's horse and wagon occurred. Plaintiff claimed and introduced evidence tending to show that the wharf was in bad condition, inasmuch as the cap log extending along its edge was covered up, and nothing provided to prevent a horse and wagon from slipping over into the dock.

The court charged in part as follows:

[The city was the owner of the wharf apparently, and about that there is no dispute. She leased it to McCaulley Bros. Perhaps the evidence does not fully and clearly establish what the condition of the wharf was at the time the city made the lease. Unquestionably, in my mind, if that wharf was in proper and safe condition at that time to be used, whether by reason of the existence of a cap log or for any other reason, the city cannot be held responsible. You will bear that in mind—that is, that if at the time the city made the lease to McCaulley Bros. the wharf was in proper and safe condition to be used, the city cannot be held responsible, because, as landlord, she was only responsible for its condition at the time the lease was made.] [2] . . .

Another point, however, arises. McCaulley Bros., as I have said, had a lease from the city for this wharf. It is true that that lease contained a proviso that they should not sublet or assign it without the consent of the city authorities indorsed upon the document. In point of fact, however, they did make a lease to a man named Herron. Now there is a difference of opinion, as you have heard in the argument, as to what the rights of the parties were, as a consequence of such assignment or subletting, it being technically a subletting. Counsel for the plaintiff claim that that makes no difference; that McCaulley Bros. having covenanted in their lease with the city that they would not sublet, they must be regarded as if they had not sublet, but had continued to be the tenants and occupiers of the wharf at the time the injury occurred. I do not think so. [The lease was a covenant which was in the interest of the city, which the city had a right to waive. By the express terms of the lease, if it was broken, the lessee might be regarded by the city as having abandoned the lease; but so far as third parties were concerned, it does not strike me that it makes any difference, and if, in point of fact, as in fact they did, according to the evidence, McCaulley Bros. made a lease of the wharf to Mr. Herron, then the same question arises with reference to them that I have already mentioned with reference to the city, and that is, did they at the time they made that lease to Herron pass over a wharf to him which was in proper and safe condition for use? If they did, they are discharged of

responsibility.  If you find that they did not, and that there-
fore they are guilty of negligence, then you must find them
negligent on the ground of something which you see in the evi-
dence, which shows that at the time of their lease the wharf
was not in a proper and safe condition.  It follows, of course,
from this that if you find in the evidence that which justifies
you in concluding that at the time the city made the lease the
wharf was in proper and safe condition, then your verdict must
be for the city.  In case you find that, at the time McCaulley
Bros. made the sublease, there is nothing in the case which
shows you that the wharf was not in proper and safe condition,
your verdict must also be in favor of McCaulley Bros.] [3]
In that case, the only recourse which the plaintiff would have,
if he has a proper cause of action, would be against Mr. Herron.
Mr. Herron is not a resident of Philadelphia, but that has noth-
ing to do with determining the rights of the parties.

Verdict and judgment for defendants.  Plaintiff appealed.

*Errors assigned* among others were (1, 2) above instructions,
quoting them.

*Joseph L. Tull*, for appellant.—The city does not relinquish
its general supervision or control of the wharf or relieve itself
from responsibility to keep it in good order and repair by leas-
ing it at a stipulated rent.  The relation of landlord and tenant
does not exist between the city and its lessee : Allegheny v.
Campbell, 107 Pa. 530.

The fact that a subtenant under the city's lessee was in pos-
session of the wharf at the time of the accident in direct viola-
tion of the city's lease to its tenant, does not relieve the city
from its duty to keep the wharf in good repair: Grier v. Samp-
son, 27 Pa. 183.

The burden of proof as to the condition of the wharf when
the city leased to McCaulley, as well as the subletting to Her-
ron, was imposed upon the appellant by the court below : Ste-
phen's Dig. of Law of Ev. 180 ; Knauss v. Brau, 107 Pa. 85 ;
Wunder v. McLean, 134 Pa. 334.

*E. Spencer Miller*, assistant city solicitor, and *John L. Kin-
sey*, city solicitor, for the city of Philadelphia, were not heard,

but cited in their printed brief, Winpenny v. Philadelphia, 65 Pa. 135 ; Pittsburg v. Grier, 22 Pa. 54.

*William J. Smyth*, for *McCaulley Brothers*, was not heard, but cited in his printed brief : Clancy v. Brown, 56 N. Y. 129 ; Swords v. Edgar, 59 N. Y. 28 : Fow v. Roberts, 108 Pa. 489 ; Albert v. State of Md., 66 Md. 325 ; Todd v. Flight, 9 C. B. 377 ; Rich v. Baitefield, 4 C. B. 783 ; Tolitt v. Sherstone, 5 M. & W. 283.

PER CURIAM, January 20, 1896 :

We find nothing in this record that would justify us in sustaining any of the assignments of error ; nor do we think that either of them presents any question that requires discussion.

Judgment affirmed.