| 99 | 239 |
| s103 | 466 |
| 99 | 239 |
| 105 | 488 |

| 99 | 239 |
| f108 | 815 |

# Richmond.

RICHMOND ICE CO. v. CRYSTAL ICE CO.

FEBRUARY 12, 1901.

1. PLEADING—*Pleas—Partial Defence—Destruction of Buildings.*—Every pleading should answer either the whole of what is adversely alleged, or such part as it is proposed to cover. A plea which sets up the partial destruction of buildings as a complete defence to an action to recover rent is bad.

2. PLEADING—*Special Plea Under Code, Sec. 3299.*—A special plea under section 3299 of the Code should allege the amount to which the defendant is entitled by way of set-off to the plaintiff's demand.

3. BILL OF EXCEPTIONS—*References from One to Another—Case at Bar.*—As a general rule, one bill of exceptions cannot be looked to in order to supply an omission in another, unless one refers to the other, but the rule is not of universal application. A written lease which is the basis of the suit, and which is copied into one bill of exceptions, may be looked to in connection with another bill of exception which fully identifies it, where it is manifest that no injustice can be done the parties.

4. CONSTRUCTION OF WRITTEN INSTRUMENTS—*General Words Followed by Particular Enumeration.*—In the interpretation of written contracts, every part of the contract must be made to take effect, if possible, and every word to operate in some shape or other. If general words are followed by words of a more particular or specific description, the former will be restricted by the latter.

5. LANDLORD AND' TENANT—*Covenant to Keep in Repair—Code, Sec. 2455—Case at Bar.*—A covenant by a lessee "to keep in repair during the term," followed by other covenants in the lease "to pay for broken glass" and for "repairs to pipes bursted by freezing," is restricted to the ordinary repairs indicated by those specially mentioned. The liability of the tenant to pay the rent stipulated for in the contract is limited by the terms of section 2455 of the Code, which allows a reduction of the rent where buildings are partially destroyed without the fault or negligence of the tenant.

Error to a judgment of the Circuit Court of the city of Richmond, rendered July 13, 1900, in an action of debt, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*S. S. P. Patteson,* for the plaintiff in error.

*Leake & Carter,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action of debt was brought to recover $1,000, it being, as alleged in the declaration, ten months' rent due under a demise for a term of ten years. The defendant pleaded *nil debet,* and offered the following special plea: "And the said defendant, by its attorney, comes and says that the lease in the declaration is in writing, a copy of which is herewith filed, and that heretofore, to wit, on the 18th day of February, 1899, after leasing of the premises in the decaration mentioned, the buildings thereon were destroyed without fault or negligence on its part, by the action of the ice, or ice gorge in James river, on which the same were situated, and there are not now, and have not been since said last-mentioned date, upon the premises, buildings of as much value to the tenant for its purposes as those buildings which have been so destroyed; and, by reason of such destruction of said buildings, the said defendant is not bound by any covenant or promise in said lease contained, to pay the rent; of which destruction of the buildings, and the refusal of the defendant to pay any further rent until the said buildings are rebuilt, the plaintiff had due notice, according to the form of the statute in such cases made and provided." The action of the court in rejecting this plea is made the subject of the first bill of exception.

This plea professes to be an answer to the whole demand made by the plaintiff, and yet it alleges that there are not now upon the premises buildings of as much value to the tenant for its purposes as the buildings which have been destroyed, thereby implying, if not asserting, a partial destruction only of the buildings.

Every pleading must be an answer either to the whole of what is adversely alleged, or to such part thereof as it is proposed to cover  If, therefore, the defendant means to insist on a partial destruction of the buildings upon the leased premises, the plea should be framed accordingly.  The defendant, by its plea, practically admits that the buildings are of some value, and yet the plea asserts that it is not bound to pay any rent, whereas if there has been only a partial destruction, the plaintiff would be entitled to an apportionment of the rent according to the fact; hence the necessity for the plea specifying the extent to which the leased premises have been impaired.  4 Minor, pt. 1, p. 784.  *Hunt* v. *Martin*, 8 Gratt. 578.

It may be further added that the statute under which this plea is filed provides that, when a defence like this is made, the special plea must allege the amount to which the defendant is entitled by reason of the matters contained in the plea.  Code 1887, section 3299; *Tyson* v. *Williamson*, 96 Va. 636.  It follows from what has been said that the plea under consideration is bad, and was, therefore, properly rejected.

It appears from the second bill of exceptions that the defendant, to maintain the issue on its part, introduced certain witnesses to prove the destruction of the buildings and wharf on the leased premises, by the ice gorge, and that on motion of the plaintiff this evidence was rejected.  This action of the court is assigned as error.  It is contended that this bill of exceptions does not refer to the lease or its contents, except to say that the plaintiff had " introduced the contract of lease dated the 8th day of June, 1895," and that unless it is made to appear from

the bill of exceptions that, under the terms of the lease, the defendant was relieved from the payment of rent if the buildings were destroyed, such evidence was improper. And in this connection it is further contended that as this bill of exceptions does not refer to the first bill of exceptions, with which the lease was filed, the latter cannot be looked to for the purpose of ascertaining the terms of the lease.

The general rule is that one bill of exceptions cannot be looked to in order to supply an omission in another unless one bill refers to the other. 4 Minor, pt. 1, p. 916, and cases there cited. The reasons for this rule are stated in *Brooke* v. *Young,* 3 Rand. 106, to be that, "although the evidence stated in the first bill might be all when it is sealed, there might be other important facts brought forward afterwards; and because, by thus supplying the defects of one exception from another, we may shut out evidence material for the other party, not noticed in either bill." Where, however, the reason for the rule does not exist, the rule itself should cease to operate; hence it is that exceptions have been engrafted upon the rule, as where the bill of exceptions proposed to be referred to was taken after the trial was over, and purported to contain all the facts in the case." 4 Minor, pt. 1, p. 916; *Perkins* v. *Hawkins,* 9 Gratt. 649; *Olinger* v. *Shepherd,* 12 Gratt. 475.

The bill of exceptions under consideration identifies the lease as that the plaintiff had introduced, dated the 8th day of June, 1895. A copy of the paper is in the record filed with the first bill of exceptions. It was not only admissible, but necessary evidence, every ruling of the court being based upon its construction, and it is clear that no additional evidence could have rendered it inadmissible. Under such circumstances, no injustice can result to the plaintiff, and the rule relied on does not apply.

This brings us to the merits of the case, which involves a construction of the lease in question.

The deed of lease bears date June 8, 1895, and is for a term of ten years thence ensuing, at $1,200 *per annum*, payable in monthly instalments of $100. The lessor covenants for the lessee's quiet enjoyment of its term, and that if the buildings shall be destroyed or so injured by fire as to render them untenantable the lease shall be determined.

The lessee covenants to pay the rent; that it will keep the plant and buildings in repair during the term of the lease; that it will replace at its own expense all glass broken during its tenancy; that any damage caused by the bursting of water pipes, from failure to turn off the water in cold weather, will be repaired at the expense of the lessee; that it will leave the premises in good repair and, at the expiration of the term, on the 8th day of June, 1905, without notice, deliver to the lessor, its agents or assigns, quiet and peaceable possession of said premises.

The claim of the plaintiff is resisted upon the ground that the buildings upon the leased premises were destroyed, without fault on the defendant's part, by an ice gorge in James river, and that, under such circumstances, it is relieved, by section 2455 of the Code, from obligation to pay the rent demanded. That section is in these words:

" No covenant or promise by a lessee to pay the rent, or that he will leave the premises in good repair, shall have the effect, if the buildings thereon be destroyed by fire or otherwise without fault or negligence on his part, or if he be deprived of the possession of the premises by the public enemy, of binding him to make such payment or erect such buildings again, unless there be other words showing it to be the intent of the parties that he should be so bound. But in case of such destruction, there shall be a reasonable reduction of the rent, for such time as may elapse until there be again upon the premises buildings of as much value to the tenant for his purposes as what may have been so destroyed; and, in case of such deprivation of possession, a like reduction until possession of the premises be restored to him."

At common law, if a lessee covenanted or promised to pay

rent or leave the premises in good repair, he was held bound to fulfil his undertaking, notwithstanding the buildings on the premises were destroyed during the term by fire or otherwise, without fault or negligence on his part, unless it was stipulated to the contrary in the lease. The revisors of 1849 proposed to change this harsh rule, and reported a section for that purpose, which has since been enlarged and carried into the section quoted from the present Code. The contention, however, of the plaintiff is that the covenant by the defendant "to keep the plant and buildings in repair during the term of this lease," is not covered by the section relied on; that at common law, under such a covenant, the lessee was bound to rebuild if the buildings were destroyed, and that, inasmuch as the statute does not mention the covenant to " keep in repair " among those it releases from the ancient rule, therefore the covenant in question "to keep the plant and buildings in repair during the term of this lease," remains as at common law, and the defendant is bound to rebuild.

It is clear from the report of the revisors (1849), volume 1, page 610, that the intention was to abolish the common-law rule with respect to this entire subject of rents. Whether or not the revisors have failed to accomplish their manifest purpose, and have left the common law rule in force where there is a covenant "to keep in repair during the term," need not be decided in this case.

The deed of lease shows, we think, on its face that the parties did not contemplate the construction sought to be put upon it. Immediately following the covenant to keep in repair and separated from it only by a semicolon, are these words: " That it will replace at its own expense all glass broken during its tenancy; that any damage caused by the bursting of water pipes, from failure to turn off water in cold weather, will be repaired at the expense of the lessee; that it will leave the property in good repair."

In the interpretation of written contracts every part of the contract must be made, if possible, to take effect, and every word of it must be made to operate in some shape or other. *Tate* v. *Tate*, 75 Va. 522.

The meaning of general words is restricted by more specific and particular descriptions of the subject to which they apply. The general words must be confined to the class of words enumerated. Sutherland on Stat. Con., sec. 262; Clark on Con., p. 592; *Vaughan* v. *Porter*, 16 Vt. 266.

To give the words "to keep in repair" the comprehensive meaning contended for, would be to treat the language immediately following as surplusage and exclude it from all consideration in determining the intention of the parties. The reasonable construction of the contract is, that the language "to replace at its own expense all glass broken during the tenancy, and restore any damage caused by the bursting of water pipes," was intended to indicate the character of the repairs contemplated by the language immediately preceding "to keep the plant and buildings in repair during the term of this lease."

Taking the paper as a whole, it seems clear that the intention of the parties was, that the repairs to be made by the lessee during the lease, were only the ordinary repairs indicated by the particular description used, such as broken glass, bursting water pipes, etc. It follows from what has been said that the liability of the lessee to pay the rent provided for in the contract, is prescribed and limited by the terms of section 2455 of the Code, which must be given its full force and effect in determining the rights of the parties. It was, therefore, error in the court to exclude the evidence offered by the defendant to prove the destruction, either partial or entire, of the buildings.

For these reasons, the judgment must be reversed, the verdict set aside, and a new trial awarded, to be had in accordance with the views expressed in this opinion.

*Reversed.*